```
 1                IN THE UNITED STATES DISTRICT COURT

 2                FOR THE SOUTHERN DISTRICT OF TEXAS

 3                        MCALLEN DIVISION

 4  UNITED STATES OF AMERICA      §   CASE NO. 7:20-CR-1791
                                  §   MCALLEN, TEXAS
 5  VERSUS                        §   TUESDAY,
                                  §   JULY 13, 2021
 6  REID ETHERIDGE AND            §
    ALICIA CRONKHITE              §   9:39 A.M. TO 9:49 A.M.
 7
                     HEARING RE: SENTENCING
 8
                 BEFORE THE HONORABLE RANDY CRANE
 9                 UNITED STATES DISTRICT JUDGE

10

11

12  APPEARANCES:                       SEE NEXT PAGE

13  ELECTRONIC RECORDING OFFICER:   RICK RODRIGUEZ

14  CASE MANAGER:                   DELIA S. RODRIGUEZ

15

16

17

18

19

20              TRANSCRIPTION SERVICE BY:

21        JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                935 Eldridge Road, #144
22                Sugar Land, TX 77478
                    281-277-5325
23          mary@judicialtranscribers.com

24
       Proceedings recorded by electronic sound recording;
25        transcript produced by transcription service.



               JUDICIAL TRANSCRIBERS OF TEXAS, LLC
```

```
 1                        APPEARANCES:

 2

 3  FOR THE GOVERNMENT:         MICHAEL L. MITCHELL, ESQUIRE
                                US Attorney's Office
 4                              1701 W Hwy 83
                                Suite 600
 5                              McAllen, TX 78501
                                956-618-8010
 6                              michael.mitchell4@usdoj.gov

 7  FOR THE DEFENDANT
    REID ETHERIDGE:             OSVALDO J. MORALES, III, ESQUIRE
 8                              Attorney at Law
                                106 S. 12th Ave., Suite 101
 9                              Edinburg, TX 78539
                                956-584-1081
10                              Fax: 956-584-1844
                                lawojm@gmail.com
11

12  FOR THE DEFENDANT
    ALICIA CRONKHITE:           JUDITH ANN CANTU, ESQUIRE
13                              Attorney At Law
                                6521 N 10TH St
14                              Suite F
                                McAllen, TX 78504
15                              956-213-8011
                                judithacantu@yahoo.com
16

17

18

19

20

21

22

23

24

25
```

1     **MCALLEN, TEXAS; TUESDAY, JULY 13, 2021; 9:39 A.M.**

2             THE COURT:  So let me call this one first,
3    20-CR-1791-1, *US v. Reid Etheridge*.

4             MR. MITCHELL:  Good morning, Your Honor, Michael
5    Mitchell for the United States.

6             MR. MORALES:  Good morning, Your Honor, Osvaldo
7    Morales her for Mr. Etheridge.

8             THE COURT:  All right.  And -- all right.  Good
9    morning, Mr. Etheridge.

10            DEFENDANT ETHERIDGE:  Good morning.

11            THE COURT:  So I'm going to use this as a status
12   hearing on this case.  I wanted to address both counsel and
13   see where we are.  I need to get his Co-Defendant in here.

14       (Co-Defendant Alicia Cronkhite enters.)

15            THE COURT:  Probably need to keep them separate.
16   So just leave her over there, maybe, by that microphone.

17            So the other half of the case is 20-cr-01791-2,
18   *USA v. Alicia Cronkhite*.

19            MR. MITCHELL:  The Government is present and
20   ready, Your Honor.

21            MS. CANTU:  Your Honor, good morning, Your Honor.
22   Judith Cantu on behalf of Ms. Cronkhite.  We're present, and
23   we're ready.

24            THE COURT:  So I received a motion for
25   continuance, kind of vague, and I wasn't really sure really

1  what's going on, but in getting ready for the hearing and
2  sentencing, their guideline ranges, I mean, they're just a
3  53, I think, is what they both guidelined out to.  Of course
4  the max is 43, so when I see a case where somebody pled
5  guilty to a life sentence, it's, you know, I want to look at
6  it more closely because that's highly unusual.
7          When somebody is going to receive a life sentence
8  by pleading guilty, generally, there is no incentive to
9  plead guilty.  And so, again, I just wanted to figure out
10 what's happening on this case?  Are these individuals that
11 are doing anything to try to help their situation, or are
12 they just content with a life sentence or at least a life
13 guideline range?
14         Is there anything that can be done to assist or --
15 what community, society, law enforcement?  I don't know what
16 kind of knowledge these individuals have, but again, it's
17 just sort of -- it's so unusual that I wanted to hear from
18 you-all and figure out what's going on, and are we really
19 ready to be sentenced when we have a guideline range of 53?
20         And again, it's capped at 43, but it's really --
21 the numbers add up to 53.  So Mr. Morales, do you want to --
22         MR. MORALES:  Yes, Judge.
23         THE COURT:  -- speak first?
24         MR. MORALES:  Judge, we are filing this motion for
25 continuance.  My client -- we've been trying to find a

1  psychologist to evaluate him --
2          THE COURT:  Uh-huh.
3          MR. MORALES:  -- and we have located one in
4  New York, and we have two in Dallas.  It's been a little bit
5  difficult coordinating for them getting down here, and his
6  mom, his mother, is the one that's actually been helping me
7  to locate people that she's willing, you know, to be able to
8  retain them, and on Friday, I spoke with one out of Dallas
9  that he could not get any flights.  The mom was trying to
10 get him down here for today.
11         THE COURT:  Uh-huh.
12         MR. MORALES:  But there was no flights available
13 from Dallas to McAllen.
14         THE COURT:  Uh-huh.
15         MR. MORALES:  I would ask the Court, Judge, if we
16 had 90 days, Judge.  We do want to get him evaluated.  There
17 are a lot of circumstances for Mr. Etheridge that need to be
18 looked at so that the Court to consider during sentencing,
19 Judge.  And I believe that we (indiscernible).
20         THE COURT:  Uh-huh.  Okay.  I mean, there are --
21 in -- it's not uncommon in child porn cases for a
22 psychosexual evaluation to be be done.  For those Defendants
23 that are indigent, BOP can send them off to a psychologist
24 in Buckner or somewhere, and they have a psychosexual
25 evaluation performed.

1                   It tells me whether they are an active sexual
2    predator, tells me about their background, and tells me
3    about the likelihood of recidivism -- things like that -- or
4    they are -- this kind of person has a higher risk of
5    engaging in this conduct, you know, so I get those.
6                   Sometimes they are helpful, and again, because of
7    the nature of this offense, these -- they are treating --
8    they're separated from general population, and it's a
9    significant undertaking to send them anywhere to get them
10   evaluated, again, because of the nature of this.
11                  But -- so I assume that's what you're trying to do
12   is to hire a private psychologist to do that?
13              MR. MORALES:  Yes.
14              THE COURT:  And --
15              MS. CANTU:  Your Honor --
16              THE COURT:  -- Ms. Cantu, what about your client?
17   Is she ready to be sentenced?  Is she doing anything to help
18   herself or --
19              MS. CANTU:  Your Honor, I look -- as far as ready
20   to be sentenced, she is not ready to be sentenced.
21              THE COURT:  Uh-huh.
22              MS. CANTU:  I know that the family had been trying
23   to gather some money for her to be analyzed.  That is not
24   going to happen.  I was going to be filing a motion after
25   speaking to her family yesterday to see if the Court would

1 perhaps appoint someone to evaluate her.

2 THE COURT: I mean, she'd have to meet the
3 indigency requirements.

4 MS. CANTU: So that's where we're at, Judge, at
5 this point. I mean, I know that there is a lot of
6 mitigation evidence that we'd like to submit to the Court;
7 however, it's been very hard with COVID and having to --
8 with the doctors and with her parents having to, you know,
9 have everybody in one place.

10 I know, you know, some of her family members did
11 have -- had come down with COVID. So it's just been a
12 series of events that have happened that have not allowed us
13 to gather the information we believe is necessary for her to
14 be sentenced.

15 So that's why I joined with Mr. Morales in his
16 motion, and we're asking for additional time. The Court is
17 correct. I mean, they are scored out high. On behalf of my
18 client, I believe that there is certainly some evidence
19 there to mitigate, and perhaps, the Court --

20 THE COURT: Uh-huh.

21 MR. MITCHELL: -- would look at that.

22 THE COURT: Yeah. And I need to study it; and I
23 mean, obviously, I read both Presentence Reports. They are
24 very lengthy and just trying to understand who did what, and
25 again, it looks like, you know, Mr. Etheridge was here --

1  was a more active and engaged, doing most of this production
2  of the pornography and engaging in sexual acts with his
3  child, and I couldn't remember whether he also engaged in
4  sexual acts with Ms. Cronkhite's child, or whether that was
5  just all photographic.
6          But anyway, so a very disturbing case, obviously,
7  to anyone that sees this.  The facts are disturbing, and
8  again, I guess, that's why the guideline range is life.  I
9  just wanted to make sure you-all were doing everything that
10 you could do to benefit your clients in this situation that
11 they're in.
12         So he's going to hire a psychologist and get a
13 psychosexual evaluation.  You're just going come up with
14 some records; is that what you're --
15         MS. CANTU:  Well, Judge, I'm trying to get the
16 family to come up with the money, and that's been a hardship
17 for them.  So we're also trying to do that, and if -- I
18 spoke to her father yesterday who is going to try to come up
19 with some money, but I do have some names of --
20         THE COURT:  Uh-huh.
21         MS. CANTU:  -- people that are willing to evaluate
22 her; and if they cannot, then, I'm going to have to file the
23 appropriate motion --
24         THE COURT:  So in some of these other cases, I
25 know that AFPD has hired a local psychologist to do that,

1  and they will make arrangements to go interview them at the
2  facility, or you know, I think, I may even have the facility
3  take them to the doctor.  I can't remember.  But anyway, you
4  might check with AFPD because they --
5          MS. CANTU:  I will.
6          THE COURT:  -- will have the information on
7  someone who does that here locally, you know, and I'm
8  guessing, they're probably at a fair price, what they charge
9  -- but it's a process.  It's -- I mean, three months is
10 cutting it close.
11         So I'm going to give you your three months, but
12 you got to get on this quick in order to schedule -- I mean,
13 hire the person, schedule an interview, have the interview,
14 and then him write a report -- him or her write a report --
15 and then, get it to Court in time for being evaluted, and
16 the Government gets to evaluate it, too.
17         They may want to have their own person.  I don't
18 know that -- they never have, but they could; and I think,
19 if the Government asks me to send for psychosexual
20 evaluation, then, I send them.
21         I want to say, one time, it was the Government
22 that asked.  It was somebody who we let out on bond, and he
23 did it again, and so it was a troubling case, and I think,
24 they're the ones that asked one time.
25         Anyway, I'll let you-all work that out.  I'll just

1  reset it for three months; and in the interim, you know, do
2  what you need to do.  These are very serious cases, so they
3  need a lot of attention, so we can get them ready for
4  sentencing.
5          All right.  Anything else you-all need from me?
6          MR. MITCHELL:  Your Honor, I would just -- I would
7  just add that the Government does have to coordinate travel
8  for the case agent in this case.  He's no longer --
9          THE COURT:  Uh-huh.
10         MR. MITCHELL:  -- in the Valley, and I do know,
11 just based on what Your Honor just said, there are some
12 questions with regards to role and what actually occurred.
13         I would like to have him available.  The only
14 concern that --
15         THE COURT:  We could Zoom -- we could Zoom him in.
16         MR. MITCHELL:  Okay.
17         THE COURT:  Yeah.  Let's do that.  I mean, it's
18 more efficient.
19         MR. MITCHELL:  Sure.
20         THE COURT:  I don't know.  If he's not here
21 anymore, we'll just Zoom him in at this next sentencing
22 hearing.
23         So also, you-all can reach out to the Court before
24 the sentencing.  I know there were something about, you
25 know, the victim or the -- do we need to have -- I think,

1  somebody reached out and said, you know, "Is this going to
2  actually happen?  Do I need to bring the victims or the
3  parents of the victims to allocute?"  Because they, of
4  course, they have the right to allocute, and I think I told
5  everybody no, it's going be a status hearing.
6          So next time we come up for sentencing, I don't
7  know whether I'm going to push it forward to sentencing or
8  not, so you-all might want to reach out to me about "Do we
9  need to bring the victims this time or not?"
10         So I'll let you know through my case manager, and
11 then, you can -- again, you can coordinate your case agents
12 for that time as well.
13         MR. MITCHELL:  Yes, Your Honor.
14         THE COURT:  Obviously, if I have both psychosexual
15 evaluations, I think, I'll be ready to proceed to sentencing
16 next time.
17         So if you-all get all that done, I mean,
18 hopefully, this next setting will be a real setting, and
19 we'll undertake the sentencing at that time.
20         All right.  Thank you-all very much for being
21 here.  Everybody is excused at this time, and we'll be in
22 recess.
23         MS. CANTU:  Judge, just before she leaves the
24 courtroom -- just so she doesn't have to sign some releases?
25         THE COURT:  Sure.  For medical records and

1  everything, sure.  We'll have her do that.  Okay.
2                COURT SECURITY OFFICER:  All rise.
3         (Proceedings adjourned at 9:49 a.m.)
4                            * * * * *
5            *I certify that the foregoing is a correct*
6  *transcript to the best of my ability produced from the*
7  *electronic sound recording of the proceedings in the above-*
8  *entitled matter.*
9  */S/ MARY D. HENRY*
10 *CERTIFIED BY THE AMERICAN ASSOCIATION OF*
11 *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*
12 *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*
13 *JTT TRANSCRIPT #66209*
14 *DATE FILED:  SEPTEMBER 27, 2022*
15
16
17
18
19
20
21
22
23
24
25